## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LESA SEDLOCK, Individually,**<br>**LINDA BARNES, Individually,**<br>**and as Administrator of the**<br>**ESTATE OF PATRICIA SCOTT,**<br><br>     **Plaintiffs,**<br><br>**v.**<br><br>**OVERLAND PARK MEDICAL**<br>**INVESTORS, LLC d/b/a**<br>**Garden Terrace and**<br>**LIFE CARE CENTERS OF AMERICA,**<br>**INC.,**<br><br>     **Defendants.** | **Case No. 19-2614-DDC** |

## MEMORANDUM AND ORDER

Plaintiffs have filed an Amended Joint Application for Approval of Wrongful Death Settlement (Doc. 35).  As the Kansas Wrongful Death Act requires, the court conducted a settlement hearing on March 10, 2021.  Plaintiffs appeared via Zoom video conference and by their attorney, Jason Roth.  Defendants appeared by their attorney, William Denning.  No other person appeared.

### I.      Findings of Fact

The court, after reviewing the parties' submissions and hearing the testimony presented at the hearing and after due consideration, finds as follows:

    1.      This action was brought by Lesa Sedlock[1] in her individual capacity and Linda

---

[1]     At the March 10, 2021 settlement hearing, Ms. Sedlock explained that she has changed her name to Lesa Walters since she filed this lawsuit.

Barnes, individually and as the Administrator of the Estate of Patricia Scott.  Plaintiffs are

surviving heirs-at-law of Patricia Scott, decedent.  They are Ms. Scott's sisters.  Linda Barnes is

the duly appointed administrator of decedent's estate.

2.      In this action, plaintiffs seek damages for personal injuries and wrongful death

allegedly sustained by decedent Patricia Scott on May 30, 2018, while a resident at Garden

Terrace.

3.      Plaintiffs, through counsel, investigated the facts and circumstances of the alleged

occurrence, decedent's death, and the potential elements of damages set out in Kan. Stat. Ann.

§ 60-1904.

4.      Defendants deny any liability to plaintiffs, but they negotiated a settlement with

plaintiffs on behalf of persons entitled to sue under Kan. Stat. Ann. § 60-1902.  This proposed

settlement, if approved, would provide defendants a full and complete release from liability and settle

all claims against defendants for injuries and death of decedent under the terms of the release

document presented to the court at the hearing.

5.      The proposed settlement is conditioned upon the court approving the apportionment

of the proposed settlement to all persons entitled to receive a distribution under the Kansas wrongful

death statute.

6.      The two plaintiffs are surviving sisters of decedent and surviving heirs-at-law.

Plaintiff Linda Barnes also serves as the estate's administrator.  Decedent Patricia Scott had one

other sister who is an heir having a potential interest under Kan. Stat. Ann. § 60-1905:  Charlotte

McMillan.  Plaintiffs established that they provided Ms. McMillan notice of the settlement and notice

of the settlement hearing, as required in Kan. Stat. Ann. § 60-1905.  *See* Doc. 37 & 38.  This notice

invited Ms. McMillan to attend and participate in the hearing.

7.      Under Kan. Stat. Ann. § 60-1902, plaintiffs may maintain this action on behalf of

themselves and all other heirs-at-law of decedent.

8.      Plaintiffs employed Jason P. Roth of Roth Davies L.L.C. as their counsel and representative to prosecute this case.  Mr. Roth now has investigated both the law and facts pertinent to this case thoroughly and advised plaintiffs that they should settle their case against defendants for a confidential amount.

9.      Plaintiffs' attorney entered into an agreement with plaintiffs and this agreement entitled counsel to attorney's fees in a specified proportion as well as expenses under his agreement with plaintiffs.  At the hearing and in plaintiffs' motion papers, counsel asked the court to approve the amount of his fee recovery.

10.      Plaintiffs testified that they believe that the proposed settlement with defendants is fair and reasonable considering all the facts and circumstances, and that the court's approval will serve their best interests.

11.      Plaintiffs testified that they understand the settlement, if approved, would constitute full satisfaction of all claims against defendants and they requested the court to approve the agreed upon attorney's fees and case expenses to their attorney and apportion the recovery, all as required by Kan. Stat. Ann. § 60-1905.

12.      At the March 10, 2021 settlement apportionment hearing, the parties asked the court to approve plaintiffs' attorney's fees and an apportion the settlement proceeds to Ms. Scott's heirs after deducting for reasonable attorney's fees.  Specifically, plaintiffs asked the court to apportion the gross settlement amount as follows:  (1) 40% to plaintiffs' attorney's fees; (2) 8.882% to Medicare; and (3) 51.172% to Ms. Scott's heirs.  And, plaintiffs asked the court to apportion the 51.172% of the settlement proceeds for Ms. Scott's heirs as follows:  (1) 50% to Lesa Walters (formerly known as Lesa Sedlock) as a surviving sibling (or 25.586% of the total

settlement), and (2) 50% to Linda Barnes as a surviving sibling (or 25.586% each of the total

settlement).[2]

After considering the parties' submissions, the testimony given at the settlement hearing,

and counsel's comments, the court is prepared to rule on attorney's fees and the proper

apportionment of the wrongful death settlement.

## II.     Legal Standard

As a federal court sitting in diversity, the court "appl[ies] the substantive law of the

forum state, Kansas."  *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d

1300, 1302 (10th Cir. 2011).  As already discussed, plaintiffs bring this action under the Kansas

Wrongful Death Act.  The Kansas Wrongful Death Act requires the court to apportion the

recovery in a Kansas Wrongful Death Act case after conducting a hearing.  Kan. Stat. Ann. § 60-

1905.  This act provides that the court, first, should allow costs and reasonable attorney's fees for

plaintiffs' counsel.  *Id.*  The act then directs the court to apportion the recovery among the heirs

---

[2]     The court intentionally has omitted references to the settlement amounts in this Order because the parties' settlement agreement includes a confidentiality clause.  During the March 10, 2021 hearing, the court heard the parties' arguments for maintaining the confidentiality of the settlement figures and finds that the interest in preserving the actual amount of their confidential settlement negotiations outweighs the public interest in accessing the settlement amounts.  *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (explaining that while the public has a "general right to inspect and copy public records and documents," the right is not absolute).

Specifically, counsel for defendants explained that his clients valued a confidentiality provision governing the settlement.  Counsel explained that the confidentiality provision was material to his clients' decision to settle this contested case and nullifying the provision would subvert the parties' agreement. The courts long have recognized a public interest supporting private efforts to resolve litigation.  Also, here, this interest does not conflict with other public interests identified by Kansas and federal law.  In the Kansas Wrongful Death Act, the Kansas Legislature recognized a public policy interest in court approval of specified aspects of lawsuits brought under that Act.  As this Order discusses, the Kansas Wrongful Death Act requires court approval of how a settlement apportions the settlement's proceeds among decedent's heirs.  *See* Kan. Stat. Ann. § 60-1905.  But the Act does not require court approval of the settlement amount.  *Cf. Adams v. Christi Reg'l Med. Ctr.*, 19 P.3d 132, 137–39 (Kan. 2001) (explaining Kan. Stat. Ann. § 60-1903's requirement for a court or jury "to award fair and just damages" is "associated with trials and verdicts" but not settlements).  Given the legislature's expression of the public interest, the court concludes that the public's interest in the actual amount of the parties' agreement does not outweigh the interest that the parties assigned to resolving disputed litigation on a confidential basis.

in proportion to the loss sustained by each one.  *Id.*; *see also Flowers v. Marshall*, 494 P.2d

1184, 1187 (Kan. 1972) (explaining that the statute "provides for an apportionment among the

heirs of any amount recovered to be made by the trial court according to the loss sustained by

each").  The full text of § 60-1905 provides:

> The net amount recovered in any such action, after the allowance by the
> judge of costs and reasonable attorneys fees to the attorneys for the
> plaintiffs, in accordance with the services performed by each if there be
> more than one, shall be apportioned by the judge upon a hearing, with
> reasonable notice to all of the known heirs having an interest therein, such
> notice to be given in such manner as the judge shall direct. The
> apportionment shall be in proportion to the loss sustained by each of the
> heirs, and all heirs known to have sustained a loss shall share in such
> apportionment regardless of whether they joined or intervened in the action;
> but in the absence of fraud, no person who failed to join or intervene in the
> action may claim any error in such apportionment after the order shall have
> been entered and the funds distributed pursuant thereto.

The Kansas Wrongful Death Act allows recovery of damages including:  (1) mental

anguish, suffering, or bereavement; (2) loss of society, companionship, comfort, or protection;

(3) loss of marital care, attention, advice, or counsel; (4) loss of filial care or attention; (5) loss of

parental care, training, guidance, or education; and (6) reasonable funeral expenses for the

deceased.  Kan. Stat. Ann. § 60-1904.  This statute thus allows the court to apportion both

pecuniary and non-pecuniary losses.  *Turman v. Ameritruck Refrigerated Transport, Inc.*, 125 F.

Supp. 2d 444, 450–55 (D. Kan. 2000); *see also* Kan. Stat. Ann. § 60-1903 (describing damages

the court or jury may award in a wrongful death action).  Pecuniary damages in a wrongful death

action are those that "can be estimated in and compensated by money."  *Turman*, 125 F. Supp.

2d at 453 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)).  Pecuniary damages "should

be equivalent to those pecuniary benefits or compensation that reasonably could have resulted

from the continued life of the deceased."  *Id.* (quoting *McCart*, 641 P.2d at 391).  Pecuniary

damages "include losses of such things as marital or parental care, services, training, advice, and

financial support."  *Id.*  Non-pecuniary damages, on the other hand, are generally intangible and

may include compensation for "mental anguish, bereavement, loss of society, and loss of companionship." *Id.* at 451 (quoting *McCart*, 641 P.2d at 391). "The Kansas Supreme Court has recognized that 'while these [intangible damages] are nebulous and impossible to equate satisfactorily with money, they nonetheless are very real and onerous to a bereaved [family member], often far outweighing in severity and permanent effect the pecuniary loss involved.'" *Id.* (quoting *Corman v. WEG Dial Tel., Inc.*, 402 P.2d 112, 115 (Kan. 1965)).

### III.   Analysis

The court addresses distribution of the settlement proceeds in the order that Kan. Stat. Ann. § 60-1905 presents them. It thus begins with the request for attorney's fees.

### A.   Attorney's Fees

Kan. Stat. Ann. § 60-1905 "requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case." *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999). "The general rule is that an attorney is entitled to the reasonable value of services performed for the client." *Id.* When deciding whether a requested fee is reasonable, the court considers the factors set forth in Kansas Rule of Professional Conduct 1.5(a). *Id.* Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Kan. R. Prof'l Conduct 1.5(a).

Plaintiffs' counsel seeks an award of attorney's fees representing 40% of the gross recovery. This is the percentage specified in the contingency fee agreement counsel reached

with plaintiffs.  At the hearing on March 10, plaintiffs' counsel described the work conducted to reach the settlement here including gathering relevant medical records, retaining experts and reviewing expert reports, and mediation.  He also described the contested nature of the case and how the parties have negotiated the claims for some time.

On the first prong of the first factor specified in Rule 1.5(a)—"the time and labor required"—plaintiffs' counsel advised that he could produce no billing records or offer even a close estimate of time he devoted to this case.  He explained that his firm does contingent fee work and so the attorneys there don't keep time records.  The court is mindful that a segment of the practicing trial bar accepts representations on a contingent fee basis.  There is nothing nefarious about that business model or those who choose to organize their attorney/client relationship under it.  But the Kansas Supreme Court has decided that the "time and labor required" for the job affects the reasonableness of an attorney's fee, *Baugh*, 973 P.2d at 207 (adopting Rule 1.5(a)'s standards), and the absence of any timekeeping records nullifies the court's ability to apply this factor to this case.  Plaintiffs' counsel is the market participant who elected not to keep time records and thus the court assigns responsibility for that decision to counsel, not plaintiffs' themselves.  This factor thus disfavors counsel's request to approve his fee application.

Other factors adopted in Rule 1.5(a) are neutral.  Plaintiffs' counsel informed the court that his acceptance of this case did not preclude him from accepting other matters (second factor).  Related to that factor, nothing suggests that his client imposed any extraordinary time limitations (fifth factor).  On the "nature and length of the professional relationship with the client"—Rule 1.5(a)'s sixth factor—counsel advised that this was his first professional engagement with either plaintiff.  So, nothing suggests that counsel should received a premium

fee or absorb a discounted one because of a long-standing relationship with his clients. These three factors are neutral here.

Several factors specified in Rule 1.5(a) favor a finding that counsel's fee request is a reasonable one. Counsel identified a challenging (but not novel) aspect of this case (a portion of factor (1)). No one witnessed decedent's fall, and this presented challenges for plaintiffs' liability burden. Counsel also explained that he devotes his practice to wrongful death and personal injury matters, and this suggests that counsel has developed the "skill requisite to perform the legal service [involved in the representation] properly" (another part of factor (1)). The "amount involved and the results" achieved (fourth factor) also favor the requested fee award. Plaintiffs cogently explained the difficulty of this case and counsel nonetheless secured a consequential settlement. Finally, the court finds that "the fee customarily charged in this locality for similar services" (fourth factor) and "whether the fee is fixed on contingent" (eighth factor) favor counsel's fee request.

Plaintiffs' counsel accepted this engagement with the risks inherent in a contingent fee arrangement. It was possible that counsel would invest time and capital into the case and receive nothing. He put his own skin in the game. The court's experience with similar cases reveals that a 40% fee arrangement, though on the high end of fees for settling cases, is a fee sometimes charged in this locality. Also, the decedent's case had a limited ceiling given her conditions during the last stages of her life. Given the smaller recovery that one reasonably could anticipate for such a decedent, the 40% share is reasonable compared to contingency fees charged and awarded in other wrongful death cases. Our court has approved attorney's fees of one-third of the settlement proceeds as reasonable in other cases apportioning wrongful death proceeds under

82an. Stat. Ann. § 60-1905.[3]  The fee request here is a bit higher, but not unreasonably so.

Moreover, granting this request "honors an agreement bargained for by competent adults." *Roth*

*v. Builder's Stone & Masonry, Inc.*, No. 19-2747-DDC-GEB, 2020 WL 7633973, at *3 (D. Kan.

Dec. 22, 2020) (approving fee request under Kan. Stat. Ann. § 60-1905).  The court thus

concludes the 40% attorney's fee award contemplated by plaintiffs' contingent fee agreement is

a reasonable fee arrangement *in this case*.

In sum, while one Rule 1.5(a) factor disfavors the fee request and several others are

neutral, the court finds that the standards adopted in this rule, on balance, favor approving the

fee request of plaintiffs' counsel.  The court thus finds that counsel's fee request here is a

reasonable one for this wrongful death case.  The court approves plaintiffs' fee request in the

amount of the modified Exhibit 3, as explained in the settlement hearing.[4]

### B.  Apportionment of Settlement

Next, the court considers how to apportion the remaining wrongful death settlement

proceeds.  Plaintiffs' counsel proposed the following apportionment:  40% plaintiffs' attorney's

fees, (2) 8.882% to reimburse Medicare "for the cost of medical care it paid relating to [this]

case;" and (3) 51.172% to two of Ms. Scott's heirs, the two plaintiffs here, in the amounts

presented at the hearing.[5]  Specifically, plaintiffs asked the court to divide the 51.172% of the

---

[3]      *See, e.g.*, *Newton v. Amhof Trucking, Inc.*, 385 F. Supp. 2d 1103, 1108 (D. Kan. 2004) (finding that a 25% contingency fee award was reasonable, and indeed lower, than what often is charged in a personal injury case); *Dudley v. Gagne*, No. 05-2030-JAR, 2006 WL 314347, at *2 (D. Kan. Feb. 3, 2006) (finding that the attorney's one-third contingency fee with plaintiff was reasonable); *Turman*, 125 F. Supp. 2d at 48 ("[I]n [the court's] experience . . . a one-third contingency fee is not uncommon in wrongful death actions.").

[4]      Exhibit 3, provided by plaintiffs' counsel during the hearing, outlined the fee requested and the larger context of the settlement.  The court directs the Clerk to attach a copy of that exhibit (as modified orally at the settlement hearing) as a sealed exhibit to this Order.  Without it, the record would contain no description of the fee award or the larger terms of this settlement without this exhibit.  Exhibit 3 must remain under seal, however, unless modified by future Order.

[5]      Plaintiffs' counsel explained that the figures in the document marked "Exhibit 3" were inaccurate.

settlement proceeds allocated to decedent's heirs of the decedent, as follows:  (1) 50% to Lesa

Walters (25.586% of the total settlement), (2) 50% to Linda Barnes (or 25.586% of the total

settlement), and (3) 0% to Charlotte McMillan.

At the hearing, the court heard testimony from both plaintiffs, Linda Barnes and Lesa

Walters.  During the testimony, both witnesses confirmed the facts of this case involving their

sister's injuries while in defendants' care and how she passed away several days after sustaining

those injuries.  Both witnesses confirmed that they hired Roth Davies, LLC to pursue their case,

and that they understand that their attorney spent time investigating and preparing the case both

before and after they filed suit.  Plaintiffs also confirmed that they are satisfied with the work

their attorneys performed, and that they fully understand the risks and benefits of settling this

case.  They confirmed also that they understand that, after attorney's fees are paid, 8.882% of the

settlement will apply to satisfy decedent's outstanding reimbursement obligation to Medicare,

and then two of Ms. Scott's three sisters, Lesa Walters and Linda Barnes, will split the remaining

51.172% of the settlement.  Both witnesses confirmed that they understand that of the settlement

amounts apportioned to the heirs, Lesa Walters and Linda Barnes each will receive 50% of that

amount (or 25.586% of the total settlement), and Charlotte McMillan will receive no part of the

heir apportionment.  Each witness testified why she believes that apportionment is fair and

reasonable.

Both witnesses also testified about the only other surviving sibling—Charlotte McMillan.

Ms. McMillan did not appear for the hearing despite receiving notice of it.  Plaintiffs' counsel

informed the court that the parties had given Ms. McMillan notice of the settlement hearing by

both regular and certified mail sent to her Kansas address.  The witnesses testified that Ms.

McMillan effectively had no relationship with Ms. Scott for the last decade or more of her life,

and following Ms. Scott's death, Ms. McMillan neither attended the funeral nor participated in

the probate proceedings or litigation against defendants.  The court asked if Ms. McMillan or any

representative wished to testify or object to the proposed apportionment of the settlement.  The

court heard no objections.  Given this testimony, the court finds that Ms. McMillan sustained no

appreciable loss from the decedent's death.  The evidence persuaded the court that Ms. McMillan

had elected to break off her relationship with decedent years before decedent's death and she

thus suffered no compensable "loss" in the sense that Kan. Stat. Ann. § 60-195 uses that term.  The

court thus apportions 0% of the recovery to Ms. McMillan.

After considering the evidence at the hearing, the court concludes the proposed

apportionment for medical liens and to Ms. Scott's heirs is appropriate.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Plaintiffs' Amended Joint

Application for Approval of Wrongful Death Settlement (Doc. 35) is granted.  The court

approves counsel's fee request and apportions the wrongful death settlement proceeds in the

fashion described by this Memorandum and Order.

**IT IS SO ORDERED.**

**Dated this 19th day of March, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
